John D. D'Ercole, Esq. (JD-1037)
Robinson Brog Leinwand Greene Genovese & Gluck
1345 Avenue of the Americas, 31st Floor
New York, New York 10105
(212) 603-6300
Attorneys for Plaintiff Peerless Electronics, Inc.



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEERLESS ELECTRONICS, INC., <br><br> Plaintiff, <br><br> - against - <br><br> ESIS, INC., <br><br> Defendant. | Index No. <br><br> **COMPLAINT** |

Plaintiff, Peerless Electronics, Inc. ("Peerless"), by its attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., for its Complaint ("Complaint") as against the defendant, ESIS, Inc. ("ESIS"), alleges as follows:

### THE PARTIES

1. Peerless is a New York Corporation with its principal place of business located at 19 Wilbur Street, Lynbrook, NewYork 11563.

2. ESIS is a California corporation with its principal place of business locate at 9171 Towne Centre Drive, Suite 335, San Diego, California 92122.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a)(1) in

that it is a suit between citizens of different states in which the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. Venue is proper in this Court and District pursuant to 28 U.S.C. § 1391(a)(2) and (3).

## JURY DEMAND

5. Plaintiff demands trial of this action by jury.

## BACKGROUND FACTS

6. For over 50 years, Peerless has been a supplier of electromechanical and interconnect products to the Aerospace and other industries.

7. Its customers include such companies as Northrup Grumman, Raytheon, Bell Helicopter, Sikorsky Aircraft and Honeywell.

8. On or about November 1, 2001, Peerless entered into a contract (the "Contract") with ESIS in which ESIS would "develop an e-Commerce solution that would benefit the business trading processes between Peerless Electronics and their customers and vendors" through ESIS's Order Processing Solution" (the "Project").

9. The Project entailed the sending and receiving of electronic data interchange ("EDI") documents.

10. EDI documents include, but are not limited to, purchase orders and invoices.

11. Peerless's customers' EDI documents were not standardized, but rather transmitted electronically in different formats.

12. ESIS was to provide a service where it would receive EDI documents from Peerless's customers and convert the documents into one standard format and then send the

converted documents to Peerless.

13. ESIS promised that with the implementation of its service, it would be able to act as a centralized gateway for Peerless and its customers.

14. ESIS promised that with the implementation of ESIS's Order Processing Solution, Peerless would be able to establish the following:

1. The ability to receive one 'common' file for each document type that will be loaded directly into Peerless's 4GL-Informix System regardless of the format of the files sent by the vendor or the customer;

2. The ability to send one 'common' file for each document type that will be extracted directly from Peerless's 4GL-Informix System and sent to the recipient in the format they expect;

3. Receive reconciliation reports that will identify Peerless Electronics' data that has been sent and received to prevent loss of data;

4. Elimination of manual data entry, current translators, and any other future coding of customers or vendors;

5. ESIS will establish communication with every customer and vendor, and will obtain the necessary specifications and relevant information to do so;

6. Ongoing maintenance and processing functions will take place on a daily basis, to ensure the projects' success and Peerless Electronics satisfaction;

7. Peerless Electronics' data is maintained on systems internal to ESIS and at no time is available to any other customer; and

8. A project team that will be proactive members of Peerless's e-Commerce

team.

15. The Project start date was established as November 1, 2001.

16. ESIS represented and promised that the Project would be completed within 90 days and that at that time Peerless would have a fully functional e-commerce solution. At or about the time of the signing of the Contract, ESIS provided Peerless a Project Plan which spanned 79.5 days.

17. It was ESIS's responsibility under the Contract to convert the non-standardized EDI documents of Peerless's customers into a standard uniform EDI format.

18. Pursuant to the Contract, Peerless was required to hire an Interface programer to develop software which would enable Peerless to accept the converted EDI document in the standard uniform format from ESIS and to send the document back to ESIS in the converted standard uniform format.

19. ESIS also promised and represented to Peerless prior to the signing of the Contract that its Ordering Process Solution was a product already developed which it was using for other customers and could be implemented to provide Peerless with the e-commerce solution specified in the Contract.

20. ESIS also promised and represented prior to and at the time the Contract was signed that it had the ability to convert the non-standardized EDI documents of Peerless's customers into the single standard uniform format necessary for the implementation of the e-commerce solution specified in the Contract.

21. After development of the specification for the standard format for the EDI documents of Peerless's customers, ESIS was required to develop a detailed structure for the EDI

documents of the ten Peerless customers specified in the Contract.

22. ESIS provided Peerless with a detailed structure for the EDI documents of only two of the ten customers' EDI documents specified in the Contract.

23. Peerless developed the programming necessary for it to receive converted EDI documents from ESIS, and performed all of its other obligations under the Contract.

24. In January 2003, more than a year after the signing of the Contract and the start date of the Project and the date that ESIS had promised the Project would be completed, ESIS informed Peerless that it would take at least one more year for ESIS to implement the e-commerce solution for Peerless specified in the Contract. In January 2003, ESIS provided Peerless a new Project Plan which was to begin on January 9, 2003 and culminate on December 10, 2003.

25. In January 2003, ESIS admitted that the reason for the delay was because it had never before implemented the e-commence solution specified in the Contract with any other customer and had to develop the required components necessary to permit the sending and receiving of EDI documents between Peerless and its customers from scratch.

26. Peerless paid ESIS a one time set up cost of $57,000 after signing of the contract, $30,000 at the Project start date and $27,000 on January 2, 2002, plus $2,050.15 per month from May 2002 through November 2002.

27. Peerless also hired various personnel in connection with the performance of its responsibilities under the Contract at a total cost of $ 130,073.

## AS AND FOR A FIRST CLAIM FOR RELIEF

28. Peerless repeats and realleges paragraphs 1 through 27 of its complaint as if fully set forth herein..

29. Prior to the execution of the Contract, ESIS concealed from Peerless the following material facts (collectively referred to as the "Undisclosed Facts"):

(1) that ESIS had never implemented the e-commerce solution specified in the Contract with other ESIS customers;

(2) that ESIS did not have the ability to convert the EDI documents of Peerless's customers into a single uniform standard; and

(3) that ESIS could not complete the Project in the promised three month time frame with the resources that it had available to it.

30. The Undisclosed Facts were material facts which ESIS had a duty to disclose to Peerless prior to its execution of the Contract based upon its superior knowledge upon which it knew Peerless was relying.

31. Peerless had no knowledge of the Undisclosed Facts prior to its execution of the Contract.

32. Had the Undisclosed Facts been disclosed to Peerless, it would not have entered into the Contract with ESIS for the purchase of e-commerce solution specified in the Contract.

33. In failing to disclose the Undisclosed Facts to Peerless, ESIS acted deliberately with the intent to deceive Peerless for the purposes of monetary gain.

34. By reason of the foregoing, Peerless has suffered damages in an amount to be determined at trial, but not less than $200,000.

35. In addition, the fraud committed upon Peerless by ESIS was premeditated, willful

and malicious and directed at the relevant sectors of the public generally. As a result, ESIS should be held liable to Peerless for punitive damages in the additional amount of not less than $5 million.

## AS AND FOR A SECOND CLAIM FOR RELIEF

36. Peerless repeats and realleges paragraphs 1 through 35 of its complaint as if fully set forth herein.

37. Prior to the execution of the Contract, ESIS made the following false statements and representations to Peerless for the purposes of fraudulently inducing it into entering the Contract (collectively referred to as the "Misrepresented Facts"):

(1) that ESIS had implemented the e-commerce solution specified in the Contract with other ESIS customers;

(2) that ESIS had the present ability to convert the EDI documents of Peerless's customers into a single uniform standard; and

(3) that ESIS could complete the Project in a three month time frame.

38. The Misrepresented Facts were made to Peerless employees including, but not limited to, Jeff Taub by ESIS employees Justin Harnish, Shanta Chevli, Andreas Ericzen, Jason Griffith and Carol Lancor, at Peerless's offices and over the telephone beginning several months prior to the signing of the Contract and continuing through the signing of the Contract and after the Contract was signed during the development phase of the Project.

39. The Misrepresented Facts were material facts which Peerless relied upon in entering into the Contract.

40. Peerless had no knowledge of the truth of the Misrepresented Facts prior to its

execution of the Contract.

41. Had Peerless known that the Misrepresented Facts were false, it would not have entered into the Contract for the purchase of ESIS's e-commerce solution and services.

42. In conveying the Misrepresented Facts to Peerless, ESIS acted deliberately with the intent to deceive Peerless for the purposes of monetary gain.

43. The misrepresentation of material information as alleged above by ESIS has caused Peerless to incur out of pocket damages in an amount not less than $200,000.

44. By reason of the foregoing, Peerless has suffered damages in an amount to be determined at trial, but not less than $200,000.

45. In addition, the fraud committed upon Peerless by ESIS was premeditated, willful and malicious and directed at the relevant sectors of the public generally. As a result, ESIS should be held liable to Peerless for punitive damages in the additional amount of not less than $5 million.

### AS AND FOR A THIRD CLAIM FOR RELIEF

46. Peerless repeats and realleges paragraphs 1 through 45 of its complaint as if fully set forth herein.

47. ESIS has breached the Contract by failing to develop and implement for Peerless the e-commerce solution specified in the Contract.

48. By reason of the foregoing, Peerless has suffered damages in an amount to be determined at trial, but not less than $200,000.

**WHEREFORE**, plaintiff Peerless Electronics, Inc. demands judgment against defendant ESIS, Inc.:

(1) on the First Claim and Second Claim for Relief for fraudulent concealment and fraudulent inducement in the amount to be determined at trial but not less than $200,000 and for punitive damages in the additional amount of not less than $5 million;

(2) on the Third Claim for Relief for breach of contract in the amount to be determined at trial but not less than $200,000;

(3) pre- and post-judgment interest thereon at the highest rate of interest permitted by law, together with the costs and disbursements of this action, including reasonable attorneys' fees, and for such other and further relief as the Court may find just and proper.

**Dated:** New York, New York
March 17, 2003

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.

By: _____
John D. D'Ercole (JD-1037)
1345 Avenue of the Americas
New York, New York 10105-0143
(212) 603-6300
Attorneys for Plaintiff